1829.

Webster<br>
v.<br>
Wise.

---

### WEBSTER v. WISE AND FORD.

Pending a treaty of purchase, a third person took a confession of judgment from the vendor, and fraudulently concealed the fact from the vendee until after the sale, for the purpose of enforcing the judgment against the land in his hands. On a bill filed against the judgment creditor and his assignee, they were decreed to release the land from the lien of the judgment.

The assignee of a judgment takes it subject to all the equities which existed against it in the hands of the assignor.

Where the assignee, after notice of the fraud, attempted to enforce the judgment against the land, he was decreed to pay costs to the complainant.

THE complainant purchased from Jonah Phelps a piece of land in Columbia county, for which he afterwards paid the full amount of the purchase-money. While the complainant was in treaty for the purchase, the defendant Wise, a grandson of Phelps, obtained from the latter a judgment bond for $425, which he caused to be entered up in the

January 20th.

1829.

Webster
v.
Wise.

Supreme Court before the deed upon the sale was executed. He *afterwards assigned the judgment, or part thereof, to the defendant Ford. The latter caused an execution to be taken out and levied on the complainant's land, and the same was afterwards sold and bid in by Ford. No certificate was given by the sheriff on the sale; but about two years afterwards an application was made to the Supreme Court, without any notice to the complainant, and the sheriff was ordered to give a certificate and file a duplicate thereof, *nunc pro tunc.* A short time after such certificate was filed, the sheriff gave a deed in pursuance of the sale; and Ford was proceeding to recover possession of the land, when the bill in this cause was filed for the purpose of obtaining an injunction and to set aside the judgment and sale.

*E. Williams*, for the complainant.

*A. P. Holdridge*, for the defendants.

THE CHANCELLOR:—Without going into a detail of all the testimony in this case, it is sufficient to say, it satisfies me beyond all doubt that the judgment against Phelps was fraudulent and void as against the complainant. If the consideration was not wholly fictitious, there is much reason to believe the greater part of the pretended debt was made up for the occasion. That it was the intention of Wise to obtain the judgment, and use it for the purpose of charging the land which the complainant was about to purchase, without letting him know of its existence until the purchase was completed and the consideration paid, is positively proved by the testimony of one witness. This, with the testimony of other witnesses to collateral facts, and the confessions of the defendant, independent of the very strong impression of fraud which the whole transaction bears on its face, is sufficient to discredit the answer of Wise.

Ford, as the assignee of the judgment, is in no better situation than Wise; for it is well settled that the assignee

of a chose in action takes it subject to all equities which existed against it in the hands of the assignor. There must be a decree that the defendants be perpetually enjoined from proceeding against the property of the complainant on that *judgment, or from proceeding at law against him, or any person claiming under him, to recover the possession of the premises. The judgment must be declared void as against the complainant, and the defendant Ford must release and reconvey to him all right and title to the premises acquired under the judgment and execution, and release the same from the lien of the judgment.

If Ford had endeavored in good faith to collect the judgment, or the amount actually advanced by him to Wise, out of the other property of Phelps, I should not think it right to charge him with costs. But as he adopted a different course, and united with Wise in setting up a fraudulent and unjust claim against the lands of the complainant, and has driven him to the expense of this litigation, he must be answerable for the costs of this suit, if it should turn out that Wise is unable to pay the same. The decree must be so framed as to charge the costs against Wise in the first instance; and if they cannot be collected by execution against him, Ford must pay the same, with liberty to prosecute the decree therefor against his co-defendant, in case he shall be obliged to pay the costs to the complainant.